IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID DEBERRY,

                  Plaintiff,

v.                                        CIVIL ACTION NO.  2:23-cv-00694

CORRECTIONAL OFFICER JUSTIN WADE, et al.,

                  Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Justin Wade's Motion for Summary Judgment. [ECF No. 28]. Plaintiff David Deberry responded on October 21, 2024, [ECF No. 32], and Defendant replied on October 28, 2024, [ECF No. 34]. The matter is ripe for review. For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**.

**I.    Background**

This case involves a correctional officer's alleged use of excessive force against the plaintiff, David Deberry ("Plaintiff"). The incident occurred on October 10, 2021, when Plaintiff was an inmate at the Northern Regional Correctional Facility and Jail in Moundsville, WV. [ECF No. 1, ¶ 1]. On October 19, 2023, Plaintiff filed a complaint against Correctional Officer Justin Wade ("Defendant"), Correctional Officer Does, and the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"). [ECF No. 1]. Broadly, he alleges Defendant's use of a taser against him was unconstitutional and caused him injury.

Count I alleges that Defendants' outrageous conduct injured Plaintiff. *Id.* ¶ 10. Count II alleges that Defendants violated Plaintiff's constitutional rights, impermissible under 42 U.S.C. §

1

1983. *Id.* ¶ 14. Count III alleges that WVDOCR is vicariously liable for the conduct of its employees. *Id.* ¶ 19. Count IV alleges that Defendant Wade and other correctional officers conspired to cover up the use of force. *Id.* ¶ 26.

Pursuant to a stipulation of dismissal, Defendant WVDOCR as well as Counts I and III were dismissed. [ECF No. 10]. Defendant Justin Wade is left as the only named defendant. Count II (Plaintiff's § 1983 claim) and Count IV (Plaintiff's conspiracy claim) are the only remaining counts.

On October 7, 2024, Defendant Justin Wade filed a Motion for Summary Judgment. [ECF No. 28]. Defendant argues that the force used against Plaintiff was reasonable [ECF No. 29]. Even if the force was unreasonable, Defendant argues, he used it in good faith to maintain order and is entitled to qualified immunity. *Id*. at 9.

a. **Plaintiff's Version of Events**

Around 8:30pm on October 10, 2021, Plaintiff went to the medical unit because he had a headache. [ECF No. 32-3, at 8] (Deposition of Plaintiff). That night Plaintiff consumed three quarters of a liter of homemade alcohol, but he was not intoxicated. *Id.* at 9–10.[1] Plaintiff stood and talked to other inmates while he waited for his Tylenol. *Id.* at 8. Sergeant Jeremy Kilgore left the room, and when he came back, he ordered Plaintiff to get on the wall and put his hands behind his back. *Id.* At first, Plaintiff did not comply but instead "squared up" facing Sergeant Kilgore. *Id.* But once Plaintiff saw more officers, he complied and went to the wall. *Id.*

---

[1] This is partly contradicted by Plaintiff's prior guilty plea in a jail hearing for the "use and possession of drugs and intoxicants/paraphernalia (alcohol)." [ECF No. 28-6, at 2]. It states that Plaintiff "testified he takes full responsibility for being drunk." *Id.* But, contrary to Defendant's argument that Plaintiff had adopted the officers' account of the incident, Plaintiff also "testified that he was handcuffed behind his back and is unclear why they tased him with his hands cuffed." *Id.*

Once Plaintiff was secured in restraints, the correctional officers told him that he was going to segregation (detention status). *Id.* As they approached the cell he would be placed in, Plaintiff walked backward talking to Defendant and asking why he was going into detention. *Id.* At that point, Defendant started calling Plaintiff a "bitch and a whore and a chicken." *Id.* Plaintiff, restrained, took a step toward Defendant. *Id.* Then, Defendant ran through the group of officers and tased Plaintiff. *Id.* Defendant tased Plaintiff five times, leaving Plaintiff with burn scars on his hand, torso, and back. *Id.* at 13. Plaintiff was prescribed psych medications to treat a "being sprayed" sensation and other psychological changes he has experienced since. *Id.* at 14.

### b. Defendant's Version of Events

Around 8:30pm on October 10, 2021, Plaintiff was taken to the medical unit to get some Tylenol. While he was there, he became belligerent and failed to comply with Sergeant Jeremy Kilgore's order to turn around and put his hands behind his back. [ECF No. 28-7, at 2] (Defendant's incident report). Sergeant Kilgore observed that Plaintiff was "slurring his words" and "cussing at me." [ECF No. 28-2, at 2] (Sergeant Kilgore's incident report). Defendant Wade heard Plaintiff say that he had been drinking and observed that Plaintiff was "stumbling, and his eyes were bloodshot and glossy." [ECF No. 28-7, at 2].

Plaintiff, secured in mechanical restraints, calmed down. *Id.* Defendant Wade and other correctional officers (five officers total) took him to a cell for a period of detention. *Id.* Once Plaintiff learned that he was being placed on detention status he became agitated and noncompliant. *Id.* As the crew of correctional officers walked Plaintiff to his cell, Plaintiff continued to turn around and tried to get closer to Defendant. *Id.* In his report, Sergeant Kilgore wrote that Plaintiff "swiftly turned and tried charging toward" Defendant. [ECF No. 28-2, at 2]. That is when Defendant was "forced to deliver a drive stun" to Plaintiff's torso. *Id.*

3

### c. Video

Video recording of the altercation begins as five correctional officers (including Defendant) walk Plaintiff to a cell for detention. [ECF No. 32-1]. The video is in black and white, blurry at times, with no audio. Plaintiff can be seen restrained, walking slowly, and sometimes walking backward, apparently talking to one of the officers. *Id.* at 21:31:31–44. Plaintiff then stops moving and attempts to take a step toward the group of four officers that were behind him. *Id.* at 21:31:43–45. He does not successfully move forward because he is restrained by the officer holding him at his handcuffs. *Id.* at 21:31:45. Defendant Wade, in the back of the group of officers, moves through the group to tase Plaintiff. *Id.* at 21:31:47. Defendant tases Plaintiff multiple times, essentially chasing Plaintiff into his cell until Plaintiff stumbles backward and falls into the cell. *Id.* at 21:31:47–51. Plaintiff's feet are sticking out of the cell, so Defendant grabs Plaintiff's legs and pushes him further into the cell, with some apparent struggling. *Id.* at 21:31:58–32:05.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)).

"A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing

that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even so, "[i]n qualified immunity cases," looking at evidence in the light most favorable to the non-moving party "usually means adopting . . . the plaintiff's version of facts." *Scott v. Harris*, 550 U.S. 1769, 1775 (2007).

Lastly, just as the district court can look at documentary evidence in deciding summary judgment, so too can the district court consider video evidence. *See Id.*; *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276–77 (4th Cir 2011) (considering a video in a qualified immunity case). Video evidence, however, "does not abrogate the proper summary judgment analysis." *Witt*, 633 F.3d at 276. Even if the video offers some support for the governmental officer's version of events, a court may still credit the plaintiff's version as long as the video does not "blatantly contradict" the plaintiff's account. *Id.* at 276–77.

### III. Discussion

To support his § 1983 claim, Plaintiff alleges that while he was escorted through the jail, secured in handcuffs, and posed no threat, Defendant tazed Plaintiff. [ECF No. 1, ¶ 7]. This, Plaintiff argues, violates his Eighth Amendment right to be free from unreasonable intrusions on his body and cruel and unusual punishment. *Id.* ¶ 15. Plaintiff also alleges that Defendant Wade and other correctional officers conspired to submit false incidents reports to cover up their conduct. *Id.* As a result of this conduct, Plaintiff asserts that he has experienced "mental anguish, embarrassment, humiliation, and physical injury." *Id.* ¶ 17.

Defendant Justin Wade moves for summary judgment on the remaining two claims: Count II (§ 1983 claim of excessive force) and Count IV (conspiracy to commit fraud).[2] Regardless, Defendant argues, he is entitled to qualified immunity on Count II.

---

[2] It is worth noting that the existence of Count IV is confusing to the court. The parties' stipulation of dismissal explicitly dismisses Counts I and III—which should leave Counts II and IV. But the fourth bullet point of the

5

### a. Count II: Excessive Force

Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights. 42 U.S.C. § 1983; *Amisi v. Brooks*, 93 F.4th 659, 670 (4th Cir. 2024). Here, Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment has been violated. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant's conduct violated the Eight Amendment.

The Eight Amendment guarantees the right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. The amendment "protects inmates from inhumane treatment and conditions," but it does not protect inmates from "every malevolent touch by a prison guard." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To prevail on an Eighth Amendment excessive force claim, a plaintiff must present evidence sufficient to satisfy both an objective and subjective component. *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

The objective component is a low bar, and it "measures the nature of the force employed, asking whether that force" was something more than de minimis or trivial. *Id.* An inmate's *injury* may be useful in deciding if a force was de minimis, but the proper analysis considers the severity of the *force* employed, regardless of the extent of the inmate's injury. *Id.* at 303. Any force more than de minimis satisfies the objective component. *Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010) (per curiam). Defendant does not dispute that deploying a taser is more than de minimis force, nor

---

stipulation states that "the only remaining claim is the alleged violation of 42 USC Section 1983." [ECF No. 10, at 1]. Then Defendant denies the allegations of Count IV in his Answer. [ECF No. 13, ¶¶ 25–26]. But in Defendant's Memorandum of Law in Support of his Motion for Summary Judgment he makes no argument as to Count IV. [ECF No. 29]. Then in his Reply, [ECF No. 34], he does make an argument. Nevertheless, I will consider the merits of the claim. *See Celotex Corp.*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.")

could he. *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) ("Nobody disputes that deploying a taser – a weapon 'designed to cause excruciating pain' that can 'burn a subject's flesh' – is a 'serious use of force.'") (quoting *Estate of Armstrong ex. rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 902 (4th Cir. 2016)).

The subjective component, a fact-intensive analysis, is disputed. The subjective component asks whether an officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Brooks*, 924 F.3d at 112 (the subjective components looks at the officer's culpable state of mind). It can be difficult, however, for the parties or the court to peer inside the minds of correctional officers. Therefore, the Supreme Court has offered factors with which "we may infer the existence of th[e] subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116 (alteration in original) (internal quotation omitted).

Those factors are (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of any reasonably perceived threat that the application of force was intended to quell," and (4) "any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (citing *Whitley*, 475 U.S. at 321). Summary judgment is not appropriate if a reasonable jury could consider the *Whitley* factors and find that an officer used force punitively or maliciously against an inmate. *Dean*, 984 F.3d at 302–03.

Here lies the problem. The factors, and the inferences that can be drawn from those factors, are "a matter for the jury." *Brooks*, 924 F.3d at 116. A reasonable jury may find that Defendant did indeed need to use force to ensure Plaintiff's compliance and that Plaintiff's actions were

7

reasonably threatening—satisfying the first and third factors. Plaintiff admitted that he was walking backward, asking why he was going to detention, and engaged in a verbal altercation with Defendant. [ECF No. 32-3, at 8]. The video shows that Plaintiff stopped walking to his cell and attempted take a step forward into the group of correctional officers. [ECF No. 32-1, at 21:31:43–45]. Defendant Wade and Sergeant Kilmore observed Plaintiff to be drunk, slurring his words, and stumbling. [ECF Nos. 28-2, 28-7]. A reasonable jury may credit this behavior as justifying the need for force against an inmate that was threatening. But a jury may also find that there was barely a need for force as Plaintiff was restrained with his arms behind his back and surrounded by five correctional officers. Similarly, a jury could find that Plaintiff represented a minor threat, as he was surrounded, restrained, and failed to take a step forward toward anyone.

Considering the second factor, the relationship between the need and the amount of force that was used, a reasonable jury may find five taser shocks is, in fact, too many. The video shows that Defendant, at or near the back of the group of correctional officers, rushed through them to tase Plaintiff. Naturally, Plaintiff reacted to the shocks and fell backward as Defendant continued to chase and shock Plaintiff into his cell. The Fourth Circuit has held that "even where an initial use of force does not by itself raise questions about a correction officer's intent under *Whitley*, the continued application of force may give rise to an inference that force was used for malicious or punitive purposes." *Brooks*, 924 F.3d at 114 (reversing the district court's grant of summary judgment to defendants in a case where a defendant officer tased an inmate three times). A jury may find it difficult to square Plaintiff's noncompliance with the rapid deployment of a taser across Plaintiff's body as he fell back into the cell.

Lastly, a jury may find that Defendant Wade and accompanying officers failed to temper the situation or the forcefulness of the response. Plaintiff had only stopped moving for less than

five seconds, and even then, he was mere steps away from the cell. A jury may consider Defendant, who had to get past the other officers, rushing through the group to tase Plaintiff. So too may the jury credit Plaintiff's assertion that Defendant Wade had been calling him names as they walked to the cell—an obvious way to escalate a situation. And, of course, a jury may again consider the four other officers around Plaintiff.

The factors are non-exhaustive of what the jury may consider and what inferences it may draw, but none of the factors are so self-evident such that summary judgment would be appropriate. Genuine disputes of material fact exist over the need of the force, the severity of the force in response to Plaintiff's noncompliance, the efforts to temper the force, and the perceived threat of Plaintiff. This makes it impossible for the court to determine that Defendant did or did not have a sufficiently culpable state of mind to satisfy the subjective component of an excessive force claim. In the light most favorable to Plaintiff, a reasonable jury could find that Defendant maliciously or punitively applied force. Therefore, summary judgment is not appropriate.

### b. Count II: Qualified Immunity

Still, Defendant may prevail on his motion for summary judgment if he is entitled to qualified immunity.[3] The inquiry is two prong: "(1) viewing the facts in the light most favorable to the Plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation." *Murray v. Lilly*, 426 F. Supp. 3d 245, 253 (S.D. W. Va. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Having already found a genuine dispute of material fact as to the first prong, I turn to the second.

---

[3] I note that most of Defendant's arguments on qualified immunity dispute whether Defendant violated Plaintiff's constitutional rights not whether the law against it is clearly established.

Across the country the prohibition of excessive force in violation of an inmate's Eighth Amendment right is well-established. *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 103 (4th Cir. 2017) ("Simply put, there are many ways of physically and maliciously assaulting a helpless prisoner, and all of them violate the Eighth Amendment."); *see also Short v. Croghan*, No. 2:22-cv-00589, 2024 WL 38554, at *4 (S.D. W. Va. Jan. 3, 2024) ("The law surrounding excessive force [in the taser use context] is clearly established."). Specifically, the Fourth Circuit has already addressed an excessive force claim—including an analysis of the *Whitley* factors—for the use of a taser on an inmate. *See Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019) (A correctional officer deployed a taser three times on an inmate who refused to stand still for an identification photo.); *see also Thompson,* 878 F.3d at 105 (recognizing the Ninth Circuit's holding that an inmate has a "right to be free from unnecessary and wanton infliction of pain and that officers violated this right by beating and using a Taser" on a handcuffed, non-resisting inmate) (citing *Martinez. v. Stanford*, 323 F.3d 1178, 1180 (9th Cir. 2003)).

More than two years before this incident, the Fourth Circuit decided *Brooks v. Johnson* and considered even earlier Fourth Circuit cases that established an officer's wanton use of force against an inmate violated the Eighth Amendment. *Brooks*, 924 F.3d at 118–20. Like Plaintiff here, Brooks (the inmate plaintiff) was handcuffed and surrounded by officers as he was escorted to the photo identification station. *Id.* at 108. Similarly, Brooks was engaged in what the Fourth Circuit described as potentially "aggressive" verbal resistance. *Id.* at 109. And importantly, Brooks was resisting and non-compliant as he turned his head, preventing a clear picture. *Id.* After seven minutes of trying to ensure his compliance, an officer tased Brooks three times over 70 seconds. *Id.* The district court granted summary judgment for the officers, holding that no genuine dispute of material fact existed as to whether the officer deployed her taser in good faith to restore order

10

and compliance with prison identification policies. *Id.* at 111.[4] The Fourth Circuit vacated and remanded.

The Fourth Circuit first reiterated that deploying a taser is a "serious use of force" meant to "cause excruciating pain." *Id.* at 112. The court held that officers cross the line of permissible order-restoring conduct "when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Id.* at 113. Further, "the continued application of force may give rise to an inference that force was used for malicious or punitive purposes." *Id.* at 114. Therefore, a reasonable jury could infer, looking at the series of taser deployments, that the officer intended to inflict pain and punishment on the inmate, and summary judgment was inappropriate. *Id.* at 115.

*Brooks*, binding Fourth Circuit precedent from 2019, gives an objectively reasonable correctional officer fair notice that using a taser multiple times on a noncompliant but handcuffed inmate, surrounded by officers, may give rise to an inference that his actions violated the Eighth Amendment.[5] So too have district courts in this circuit—relying on *Brooks*—recognized that an "improper motive could be inferred in part from fact that inmate was subjected to taser shocks while 'handcuffed and surrounded by officers.'" *Anderson v. Beeman*, No. 21-0683-BAH, 2024 WL 5008052, at *8 (D. Md. Dec. 6, 2024) (quoting *Brooks*, 924 F.3d at 116); *see also Dillard v.*

---

[4] The district court did not address qualified immunity, but the Fourth Circuit did.

[5] I note, but do not rely on, Defendant Wade's personal notice (not propensity) of correctional policies on the use of force. [ECF No. 32-2, at 1–2, 4–6]; *see also Brooks*, 924 F.3d at 122 ("relevant use-of-force policies routinely are considered in excessive-force litigation"). Plaintiff offers two separate internal reprimands of his conduct from correctional supervisors. In one instance, Defendant deployed pepper spray at an inmate who, although displaying passive resistance, was handcuffed, restrained by the legs, and surrounded by at least three other officers. [ECF No. 32-2, at 1–2]. The reprimand noted that although the inmate "raised the torso portion of his body … and appeared to turn to the officer beside him," the acts did not "constitute an act of aggression." *Id.* The second reprimand involved Defendant Wade's deployment of pepper spray at an inmate, in a restraint chair, who "moved his leg slightly" and Defendant perceived "as an act of aggression." *Id.* at 4–5. While the deployment of pepper spray and a taser are, of course, different, the Fourth Circuit has noted that that difference "is not enough to deprive an officer of fair notice" that the same principles of excessive force Eighth Amendment violations will apply. *Brooks,* 924 F.3d at 120.

11

*Burrs*, No. 5:20-CT-03365-M, 2023 WL 2541711, at *4 (E.D.N.C. Mar. 16, 2023); *Short v. Croghan*, No. 2:22-cv-00589, 2024 WL 38554, at *3 (S.D. W. Va. Jan. 3, 2024). Other circuits have similarly recognized that tasers and like equipment, used to inflict punishment, may violate the Eighth Amendment's prohibition on excessive force. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 796–97 (9th Cir. 2018) (collecting cases); *Lewis v. Downey*, 581 F.3d 467, 478–79 (7th Cir. 2009) (finding a genuine issue existed as to whether an officer deployed a taser in good faith); *Hickey v. Reeder*, 12 F.3d 754, 758–59 (8th Cir. 1993) (holding that the use of a stun gun on a non-violent inmate's misconduct was "summary corporal punishment" that violated his right to be free from cruel and unusual punishment).

In light of the clearly established law, Defendant can be sure of his notice that his conduct may have violated Plaintiff's Eight Amendment right. Even so, there need not be "a case directly on point for a right to be clearly established," as long as existing precedent makes the right clear beyond debate. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Of course, because I found a genuine issue of material fact exists, a jury may conclude that Defendant applied force in good faith. If that is the case, then Plaintiff's claim fails and Defendant would be entitled to qualified immunity. For now, however, as a genuine dispute exists, Defendant's Motion for Summary Judgment, [ECF No. 28], is **DENIED in part** as it relates to Count II.

    c. **Count IV: Conspiracy**

In his Complaint, Plaintiff alleges that Defendant Wade and other correctional officers engaged in a cover up to file false incident reports related to tasing Plaintiff. [ECF No. 1, ¶¶ 25–26]. That is the entirety of Plaintiff's evidence to support this claim. Plaintiff did not depose Defendant Wade or other correctional officers alleged to have conspired. Even in the light most favorable to Plaintiff, his disagreement with the characterization of the incident in the officers'

12

reports does not amount to a conspiracy. Conclusory allegations, without more, are insufficient to preclude the granting of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Dash v. Mayweather,* 731 F.3d 303, 311 (4th Cir. 2013). Therefore, Defendant's Motion for Summary Judgment, [ECF No. 28], is **GRANTED in part** as it relates to Count IV.

## IV. Conclusion

For these reasons, Defendant's Motion for Summary Judgment [ECF No. 28] is **DENIED in part** as it relates to Count II and **GRANTED in part** as it relates to Count IV.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    January, 7 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE